UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES W. WINDHAM, | ) 1:14-cv-01636-LJO-BAM (PC) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN |
| v. | ) CLAIMS AND DEFENDANTS |
| M. MARIN, et al., | ) (ECF Nos. 1, 12) |
| Defendants. | ) FOURTEEN-DAY DEADLINE |

**Findings and Recommendations Following Screening**

**I.   Background**

Plaintiff Charles W. Windham ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff initiated this action on October 6, 2014.  The matter was transferred to this Court on October 20, 2014.

On March 6, 2015, the Magistrate Judge screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, and found that it stated cognizable Eighth Amendment claims for excessive force against Defendants Uribe, Marin, Raley, Contreras, Capano, Rubio and Doe #1 and for deliberate indifference to serious medical needs against Defendants Navarro, Morales, Marin and Shiver, but failed to state a cognizable claim against any other defendant.  The Magistrate Judge therefore provided Plaintiff with an opportunity to file an amended complaint or notify the Court whether he was agreeable to proceed only on the cognizable claims.  (ECF No. 12.)

On March 25, 2015, Plaintiff notified the Court of his intention to proceed only on the cognizable claims.  (ECF No. 14.)  Accordingly, the Court issues the following Findings and Recommendations.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

///

///

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at California State Prison, Corcoran, where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Dave Davies, Warden; (2) Jeff Beard, CDCR Secretary; (3) Sergeant Marin; (4) Sergeant Raley; (5) Dan Uribe, (6) J. Contreras; (7) A. Capano; (8) R. Rubio; (9) Navarro; (10) Does 1-25; (11) Ms. Shiver; (12) RN Morales; (13) RN Brett; and (14) Dr. Doe #26.

Plaintiff alleges: On September 11, 2014, Plaintiff left his cell and proceeding to his afternoon education assignment via the B-Section staircase. Near the bottom of the staircase, Plaintiff was summoned to the 3B02 podium by Defendant Marin. Plaintiff proceeded to the podium where Defendants Marin, Raley, Contreras and Uribe were standing together looking at Plaintiff. Upon arrival, Defendant Uribe screamed at Plaintiff, stating "Nobody called you, asshole! Get the fuck outta here!" (ECF No. 1, p. 4.) Defendants then laughed. Plaintiff turned away from the Defendants and began walking toward the side exit. After several strides, Plaintiff was hit hard and tackled to the floor by an unknown person. Fearing for his life, Plaintiff went into survival-mode and began struggling with his unknown attackers. It was determined subsequently that the attackers were Defendants Uribe, Marin, Raley and Contreras. Defendant Uribe was the primary attacker and rammed his right shoulder into Plaintiff's back. This caused Plaintiff to fall face-first onto the concrete floor. Defendant Uribe then pinned Plaintiff's arms to his sides as they both fell forward to the ground. Defendant Uribe held Plaintiff down while Defendants Marin, Raley and Contreras kicked and struck Plaintiff, who was not resisting, with their clenched fists and boots. Plaintiff sustained multiple serious injuries. Defendant Uribe also struck Plaintiff in the head three times with his fist and slammed Plaintiff's head into the concrete floor several times. While beating Plaintiff, Defendant Marin stated, "This Corcoran, motherfucker! You file shit on us and this is what you're going to get, you fuckin" troublemaking asshole! The Warden doesn't give a fuck what we do, you dumb shit. Nobody does. This is Corcoran - - we do things different here, motherfucker. You're gonna learn that or die!"

1    Responding alarm staff, Defendants Capano, Rubio and Does 1-25 arrived on the scene.
2 The defendants took turns kicking and stomping Plaintiff, who was prone, restrained and
3 compliant.  Two of the responding defendants grabbed Plaintiff's legs, lifted them in the air and
4 twisted each one in an unnatural manner, which caused great pain and physical injuries to
5 Plaintiff (e.g., sprain/breaks, contusions/bruises, discoloration/hemorrhaging).  Defendants
6 Capano and Rubio took positions directly adjacent to Plaintiff's ears, head and shoulders, with
7 Defendant Capano on the right and Defendant Rubio on the left.  Defendants Capano and Rubio
8 simultaneously kicked Plaintiff in the head, ears and shoulders as hard as they could.
9    Defendant Marin then began yelling, "That piece-of-shit there, Windham, attacked and
10 assaulted a peace officer.  He attacked us.  We're charging him with that and a D.A. Referral."
11 (ECF No. 1, p. 9.)  All of the defendants began parroting what Defendant Marin had said.
12 Defendant Marin then told Defendant Capano, "Get that piece-of-shit outta here!"  (Id.)
13    Defendant Capano screamed at Plaintiff to get up.  As Plaintiff attempted to rise to his
14 feet, Defendant Capano grabbed Plaintiff's left arm and lifted it high.  When Plaintiff was almost
15 upright, she let go, causing Plaintiff to crash back down to the concrete floor and strike his head.
16 Defendants Capano and Rubio pulled Plaintiff up by his armpits and, along with Doe #1, began
17 shoving Plaintiff out of the rotunda.  Defendants Marin and Raley followed.  Once outside,
18 Defendant Marin ordered the guards to put Plaintiff on the wall.  At that point, they slammed
19 Plaintiff, who was barefoot, onto the hot concrete wall.  The concrete burned Plaintiff's face and
20 the asphalt burned his feet.  Defendant Marin began a tirade at Plaintiff.  Defendants Marin and
21 Raley begin striking Plaintiff with clenched fists, while Defendant Marin was screaming at
22 Plaintiff.  Defendant Marin then ordered the guards to take Plaintiff on the scenic route to
23 program.
24    Defendants Capano, Rubio and Doe #1 paraded Plaintiff, who was barefoot, up and down
25 the gravel rocks, causing Plaintiff pain, lacerations, contusions and burns to his feet.  The
26 temperature was in excess of 100°.  These defendants slammed Plaintiff's head against the
27 Program Office wall while threatening and taunting him.  Plaintiff had been telling these
28 defendants that he could not breathe, felt sick to his stomach, and his feet were cut and burning.

4

They ignored him and shoved him into a cage while handcuffed.  Plaintiff vomited blood multiple times and had difficulty breathing.  He collapsed.

Plaintiff was handcuffed for 13 ½ hours in a small, unventilated, non-air-conditioned room.  His hands were severely swollen, black-and-blue, numb and damaged.  Plaintiff kept asking Defendant Navarro to loosen the cuffs or remove them, but Defendant Navarro refused.  Plaintiff asked to speak to the Sergeant, but Defendant Navarro replied, "No, you can't.  She's busy."  (ECF No. 1, p. 12.)

While Plaintiff was confined in the room, Defendant Morales came inside.  Plaintiff told her that he needed to see a medical doctor.  Defendant Morales hurriedly left, asking Defendant Marin, "What's wrong with him?  Something's wrong with him!"  Defendant Marin replied, "He's a big problem for use if you know what I mean?  Fuck him!"  Defendant Morales then responded, "Okay, I'll just put down that he refused medical attention."  (ECF No. 1, p. 12.)  Defendant Morales then departed without examining or speaking to Plaintiff.

After Defendant Morales left, Ms. Shiver, a psychologist, came into the room.  Plaintiff demanded to be seen by a medical doctor for his injuries.  Defendant Shiver refused, stating "You have to answer my questions first."  Defendant Shiver then asked repeat questions despite Plaintiff's condition.  Plaintiff repeatedly demanded medical attention, but Defendant Shiver repeatedly refused and kept asking questions that Plaintiff had already answered.  Defendant Shiver left, stating "I need to go write my report on this now.  When I'm done, I'll have a physician examine you."  Plaintiff objected, pleading that he needed treatment now, not after she wrote her report.  (ECF No. 1, p. 13.)

Later, Plaintiff was taken to the prison hospital's emergency room holding cage area.  After some time, Defendant Brett appeared at Plaintiff's cage.  Plaintiff demanded to be examined and treated by the on-duty ER doctor, Dr. Doe #26.  Defendant Brett left without explanation.  Plaintiff asked Defendant Navarro to get the doctor, but Defendant Navarro refused, stating "There's a bunch of people ahead of you, you have to wait your turn—there's only one ER doctor on-duty."  (ECF No. 1, p. 14.)  Plaintiff alleges that he was never examined or treated for his injuries.

On September 12, 2014, Plaintiff was taken to the overflow visiting room small cells, where he remained until September 14, 2014. Plaintiff did not have a toilet, sink or water. He also did not have any medical exam or treatment. Plaintiff was discharged by the hospital committee on September 17, 2014, but not transported to Ad-Seg until September 23, 2014. There was no explanation as to why Plaintiff was held incommunicado within the hospital.

Plaintiff believes that Defendant Marin orchestrated the attack on September 11, 2014, and that Defendant Marin was aware of an attack on August 11, 2014, by Defendants Uribe, Rush, Vargas and John Doe. Plaintiff had a Superior Court appearance the next day, on August 12, 2014, an apprised the judge of the attack.

Plaintiff asserts a claim for retaliation in violation of the First Amendment. Plaintiff also asserts claims for excessive force, failure to protect/intervene, and deliberate indifference to serious medical needs in violation of the Eighth Amendment. Additionally, Plaintiff forwards state law claims for assault, battery, negligence, negligent supervision, negligent and intentional infliction of emotional distress and medical malpractice. Plaintiff seeks declaratory and injunctive relief, along with compensatory and punitive damages.

### III.     Discussion

### A.  Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to

perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978).

Here, Plaintiff fails to link Defendants Davies, Beard, Dr. Doe #26 and multiple other doe defendants to his claims.

To the extent Plaintiff seeks to bring suit against Defendants Davies and Beard based on their roles as supervisors, he may not do so. Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074–75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074–75; Lacey, 693 F.3d at 915–16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

**B. Retaliation**

Within the prison context, a viable claim of First Amendment retaliation consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

A plaintiff suing for retaliation under section 1983 must allege that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance

legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). The plaintiff does not need to show actual inhibited or suppressed speech, but that there was a chilling effect upon his speech. Rhodes, 408 F.3d at 569. The burden is on the plaintiff to plead and prove the absence of any legitimate correctional goals for the alleged conduct. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Here, Plaintiff fails to establish that any defendant took an adverse action against him because of any protected conduct or exercise of his constitutional rights. Although Plaintiff asserts that Defendant Marin made reference to Plaintiff filing on correctional officers, these allegations are not sufficient. There are no factual allegations that Plaintiff filed anything or engaged in any protected conduct. It is unclear whether Plaintiff believes that his report of an August 11, 2014, is the underlying basis of any retaliation claim. Plaintiff also fails to allege any chilling effect of such conduct. More importantly, Plaintiff does not identify those defendants he claims were retaliating against him.

**C. Excessive Force**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The inquiry as to whether a prison official's use of force constitutes cruel and unusual punishment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992); Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 1085(312), 89 L.Ed.2d 251.

"The objective component of an Eighth Amendment claim is ... contextual and responsive to contemporary standards of decency." Hudson, 503 U.S. at 8, 112 S.Ct. at 1000 (internal quotation marks and citations omitted). A prison official's use of force to maliciously and sadistically cause harm violates the contemporary standards of decency. Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010). However, "[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9, 112 S.Ct. at 1000). Factors that can be considered are "the

need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." Whitley, 475 U.S. at 321, 106 S.Ct. at 1085; Marquez v. Gutierrez, 322 F.3d 689, 692 (9th Cir. 2003).

At the pleading stage, Plaintiff has stated cognizable excessive force claims against Defendants Uribe, Marin, Raley, Contreras, Capano, Rubio and Doe #1 arising out of events on September 11, 2014.  Plaintiff has not stated a cognizable excessive force claim against any other defendants.

### D.  Failure to Intervene/Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (quotations omitted).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  The failure of prison officials to protect inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff.  E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

Here, Plaintiff does not identify any individual defendant that failed to intervene or protect him from attack.  Plaintiff also does not include any factual allegations demonstrating that prison officials knew of and disregarded a substantial risk of serious harm to Plaintiff from any alleged attack.

### E.  Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006 ) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could

result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010). "Deliberate indifference is a high legal standard." Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer, 511 U.S. at 837.

<u>Defendants Navarro, Morales, Marin and Shiver</u>

At the pleading stage, Plaintiff has stated a cognizable claim for deliberate indifference to serious medical needs against Defendants Navarro, Morales, Marin and Shiver.

<u>Defendants Brett and Dr. Doe #26</u>

Plaintiff has not stated a claim for deliberate indifference to serious medical needs against Defendants Brett and Dr. Doe #26. Plaintiff's complaint lacks sufficient factual allegations to demonstrate the Defendants Brett and Dr. Doe #26 were deliberately indifferent to Plaintiff's medical needs. As indicated by Plaintiff, there were other patients in the ER and only a single ER doctor. Further, there are no factual allegations involving Defendant Dr. Doe #26 to demonstrate that he knew of serious medical need and disregarded that risk or that he was even aware of Plaintiff's presence in the ER. Further, Plaintiff's interaction with Defendant Brett lacks sufficient allegations to demonstrate deliberate indifference.

**F.  State Law Claims**

The Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe

v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against a public employee, a plaintiff must allege compliance with the Government Claims Act.  Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at 1239; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff has not alleged compliance with the Government Claims Act.

### IV.     Conclusion and Recommendation

Plaintiff states Eighth Amendment claims for excessive force against Defendants Uribe, Marin, Raley, Contreras, Capano, Rubio and Doe #1 and for deliberate indifference to serious medical needs against Defendants Navarro, Morales, Marin and Shiver, but fails to state a cognizable claim against any other defendant.  The Court therefore recommends that Plaintiff's retaliation, failure to intervene/protect, and state law claims and Defendants Davies, Beard, Dr. Doe #26, Brett, and Does #2-25 be dismissed from this action.  Plaintiff was provided with an opportunity to file a first amended complaint, but opted to proceed on the cognizable claims.  As such, the Court does not recommend granting further leave to amend.

Based on the foregoing, it is HEREBY RECOMMENDED as follows:

1.     This action proceed on Plaintiff's complaint, filed on October 6, 2014, for violation of the Eight Amendment  based on allegations of excessive force against Defendants Uribe, Marin, Raley, Contreras, Capano, Rubio and Doe #1 and based on allegations of deliberate indifference to serious medical needs against Defendants Navarro, Morales, Marin and Shiver;

2.     Plaintiff's retaliation, failure to intervene/protect, and state law claims be dismissed from this action;

3.     Defendants Davies, Beard, Dr. Doe #26, Brett and Does #2-25 be dismissed from this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file

written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **March 30, 2015**              /s/ Barbara A. McAuliffe          _
                                           UNITED STATES MAGISTRATE JUDGE